UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ANTHONY RUFFIN,

                              Petitioner,

    vs.                                                    9:18-CV-61 (DNH/ATB)

SUPERINTENDENT,

                              Respondent.

---

ANTHONY RUFFIN, Petitioner pro se
MATTHEW B. KELLER, Asst. Attorney General for Respondent

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

**I.  Background**

Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a judgment of conviction rendered in the Oneida County Court on January 4, 2010. (Petition ("Pet.") ¶ 1). Petitioner was convicted after a guilty plea to second degree murder pursuant to N.Y. Penal Law § 125.25(3) (felony murder). Petitioner was sentenced to 18 years to life incarceration. Petitioner did not file a direct appeal of his conviction, notwithstanding the Appellate Division granting him an extension of his time to appeal. (State Court Record ("SR" at 42) (Dkt. No. 14-1).

On October 30, 2015, petitioner filed a motion to vacate his conviction and set aside his sentence in the Oneida County Court pursuant to N.Y. Crim. Proc. Law

§§ 440.10 and 440.20.[1] (SR at 80-100). Petitioner's motion was denied by Oneida County Court Judge Michael L. Dwyer on December 14, 2015, (SR at 106-120). The Appellate Division, Fourth Department denied leave to appeal Judge Dwyer's decision on March 21, 2016. (SR at 138). Petitioner was represented by counsel throughout his state court proceedings.

The petition in this case was filed by petitioner pro se on June 3, 2016 in United States Court for the District of Idaho. (Dkt. No. 1). On June 21, 2017, Chief United States Magistrate Judge Ronald E. Bush ordered the petition transferred to the United States District Court for the Western District of New York. *Ruffin v. Annucci*, No. 1:16-CV-223 (REB) (D. Idaho June 21, 2016). (Dkt. No. 3). On January 16, 2018, the case was transferred to the Northern District of New York pursuant to a Text Order, issued by United States District Court Judge Lawrence J. Vilardo, dated December 7, 2017. *Ruffin v. Annucci*, No. 1:17-CV-612 (LJV) (W.D.N.Y. Dec. 7, 2017).

On January 22, 2018, the Honorable David N. Hurd, United States District Judge, conducted an initial review of the petition, and ordered a response. (Dkt. No. 7).

---

[1] Petitioner's counsel initially filed only a motion to set aside the sentence pursuant to section 440.20 on June 16, 2015. (SR at 44-71). The District Attorney responded in opposition, and petitioner's counsel filed a reply. (SR at 72-74, 75-79). Counsel later withdrew the motion and filed the October 2015 motion to vacate the conviction in addition to setting aside the sentence. (SR at 80-100). Judge Dwyer discussed this procedural history in his decision denying the October 2015 motion. (SR at 108). According to Judge Dwyer, on October 16, 2015, petitioner's counsel moved to withdraw the June 2015 motion "to resubmit an amended motion by which he would advance a different legal argument. The request to withdraw the original motion was granted." (*Id.*) On October 30, 2015, petitioner's counsel filed the motion to vacate and to set aside the sentence. (*Id.*) The amended motion papers were served on the Oneida County District Attorney and on the New York State Attorney General because petitioner was challenging the constitutionality of a New York State statute. (*Id.*) According to Judge Dwyer, on November 10, 2015, the Attorney General informed Judge Dwyer that the Attorney General would not intervene in the proceeding at that time, but would reserve the right to do so in the future. (SR at 108-109).

Respondent has filed his answer, together with the pertinent state court records and a memorandum of law. (Dkt. Nos. 12-14). In support of his application for habeas relief, petitioner has filed the Memorandum of Law filed by counsel in his Oneida County Court motion to vacate pursuant to sections 440.10 and 440.20. (Pet.'s Mem.) (Dkt. No. 1-1).

Petitioner raises three grounds for this court's review:

(1) New York State's Youthful Offender Law is unconstitutional in violation of the Eighth Amendment. (Pet.'s Mem. at 1-4).[2]

(2) *Miller v. Alabama*, 567 U.S. 460 (2012) created a new substantive rule and should be applied retroactively. (Pet.'s Mem. at 5).

(3) New York's Youthful Offender Law, mandating that juveniles charged with murder be automatically treated as adults, violates Equal Protection and Due Process. (Pet.'s Mem. at 6-12).

Respondent argues for denial of the petition, based on the statute of limitations and on the merits of petitioner's claims. For the following reasons, this court agrees with the respondent and will recommend denial of the petition.

## II. Relevant Facts

The court will summarize the relevant facts as stated by Judge Dwyer in his decision denying plaintiff's section 440.10 and 44.20 motion.[3] Petitioner shot and

---

[2] The pages of this document are consecutively numbered, and the court will cite to the pages as so numbered. The state court records (Dkt. No. 14) also contain a copy of this document, but the court will cite to the petitioner's submission. The rest of the state court records will be cited with the respondent's Bates Stamp number contained in Dkt. No. 14.

[3] Petitioner pled guilty, and there was no direct appeal. Thus, the only facts in this action are those stated during the plea colloquy, sentencing, and the County Court's section 440 decision. Section 2254 provides that the determination of a factual issue, made by a state court shall be presumed to be correct unless the petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C.

killed 18-year old Joshua Thomas on February 16, 2009.  Petitioner and an accomplice contacted the victim to arrange a meeting in order to purchase drugs.  (SR at 114).  However, petitioner and his accomplice planned to rob the victim.  Petitioner brought a plastic BB gun to the robbery, while his accomplice brought a real handgun.  By the time that the attempt to rob Thomas took place, petitioner had possession of the real gun, and possessed the gun during the commission of the robbery.

According to the County Court's decision, the District Attorney acknowledged that the petitioner probably did not intend to shoot anyone when the confrontation started.  The District Attorney did note that the incident was an accident or was the result of petitioner's negligence.  Petitioner maintained that the gun discharged accidentally. (SR 114).  However, there is no dispute that petitioner had the loaded gun when it was discharged, and that petitioner killed the victim.

In April of 2009, an Oneida County Grand Jury indicted petitioner for second degree murder, two counts of attempted first degree robbery under N.Y. Penal Law § 160.15(1) two counts of attempted first degree robbery under N.Y. Penal Law § 160.15(2), two counts of attempted second degree robbery, and second degree criminal possession of a weapon.  On September 4, 2009, petitioner pled guilty to the top count of second degree murder. (SR at 2-3).  The trial judge told petitioner that he would be sentenced to an intermediate term of incarceration with a minimum of 15 to 20 years and a maximum term of life. (SR at 2-3, 107).  The judge also told petitioner that it would be the judge's responsibility to determine the minimum sentence based upon the

---

§ 2254(e)(1).  Petitioner does not challenge the facts as found by Judge Dwyer in his decision.

4

extent of the petitioner's cooperation in his co-defendant's prosecution. (SR at 107). On January 4, 2010, Judge Dwyer sentenced the petitioner in accordance with the plea agreement to an indeterminate term of 18 years to life imprisonment.

## III. Statute of Limitations

### A. Legal Standard

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that a federal court lacks the power to grant a writ of habeas corpus under 28 U.S.C. § 2254

> unless the adjudication . . . (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. 2254(d). The AEDPA established a one-year statute of limitations for prisoners to seek federal review of their state court criminal convictions. 28 U.S.C. § 2244(d)(1). The one year period generally begins to run from the date on which the state criminal conviction became final by the conclusion of direct review or by the expiration of the time to seek direct review. *Id.* § 2244(d)(1)(A). If a direct appeal is filed, the judgment of conviction becomes final ninety days after the date that the New York Court of Appeals denies leave to appeal.[4] *Williams v. Artuz*, 237 F.3d 147,

---

[4] The ninety-day time period is the time that a petitioner would have to seek direct review of his conviction in the United States Supreme Court and must be counted for purposes of the AEDPA statute of limitations. *Williams v. Artuz*, 237 F.3d at 150 51 (discussing the statutory requirement that the statute of limitations begins to run "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review")

5

150–51 (2d Cir. 2001).

Other dates from which the limitations period may start running are the date on which an unconstitutional, state-created impediment to filing a habeas petition is removed; the date on which the constitutional right on which petitioner bases his habeas application was initially recognized by the Supreme Court, if the right was newly recognized *and* made retroactively applicable; or the date on which the factual predicate for the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(B), (C), and (D). In *Duncan v. Walker*, 533 U.S. 167, 179 (2001), the Supreme Court stated that this statute of limitations "reduces the potential for delay on the road to finality by restricting the time that a prospective federal habeas petitioner has in which to seek federal habeas review."

The AEDPA provides that the one year limitations period will be tolled while a "properly filed" state court post-conviction motion is pending. 28 U.S.C. § 2244(d)(2). The tolling provision only applies if the post-conviction motion was "properly filed" and if it was pending within the one-year limitations period. *Smith v. McGinnis*, 208 F.2d 13, 16 (2d Cir. 2000). Simply filing a post-conviction motion does not re-start the limitations period, and it excludes from the limitations period only the time that the motion remained undecided, including the time during which an appeal from the denial of the motion was taken. *See Bennett v. Artuz*, 199 F.3d 116, 120–21 (2d Cir. 1999), *aff'd*, 531 U.S. 4 (2000).

Although the AEDPA does not provide that the statute of limitations may be

---

(citing 28 U.S.C. § 2244(d)(1)(A)).

tolled for any reasons other than the pendency of a state post-conviction motion, in "extraordinary circumstances," the court may equitably toll the limitations period. *Holland v. Florida*, 560 U.S. 631, 649 (2010). In order to warrant equitable tolling, petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Id.* (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)) (internal quotation marks omitted). The Second Circuit has also determined that courts should consider a claim of "actual innocence" as a basis for excusing late filing under the AEDPA. *See Rivas v. Fischer*, 687 F.3d 514, 548 (2d Cir. 2012).

### B. Application

As stated above, petitioner was sentenced on January 4, 2010, in accordance with the plea agreement to an indeterminate term of 18 years to life imprisonment. The petitioner did not appeal his conviction. (Pet. ¶ 8). He initiated the appeal process by moving pro se in the Appellate Division for permission to appeal as a poor person and for assignment of counsel. (SR at 11). The Appellate Division directed petitioner to ask for an extension of time to file a notice of appeal because petitioner's time to appeal had already expired.

Petitioner complied with the court's direction, and in January of 2011, the Appellate Division granted petitioner's motion for an extension of time, and ordered petitioner to file and serve his notice of appeal by February 17, 2011. (SR at 12). However, petitioner took no further action in furtherance of his direct appeal. Thus, pursuant to 28 U.S.C. § 2244(d)(1)(A), petitioner's statute of limitations started to run

on February 17, 2011 because he had no further recourse on direct appeal.[5] The one year statute of limitations would have expired on February 17, 2012, almost four years before petitioner "filed" this habeas petition on May 24, 2016.[6] There is no statutory tolling in this case because the petitioner did not file his section 440 motions until 2015,[7] well after the statute of limitations had expired, and thus, the pendency of his section 440 motions would not serve to toll the statute, nor would they restart the running of the statute. *Smith v. McGuinnis, supra*; *Bennett v. Artuz, supra.* Thus, if the court uses the date that petitioner's conviction became final as the date that the statute of limitations began to run, the petition is clearly untimely.

The court must also consider whether the statute of limitations in this case began to run from one of the other dates described in the statute. In this case, the only other possibility based on the facts of this case is the date on which the constitutional right on which petitioner bases his habeas application was initially recognized by the Supreme Court, if the right was newly recognized *and* made retroactively applicable. 28 U.S.C. § 2243(d)(1)(C).

---

[5] The extra ninety days mentioned above does not apply in this case because petitioner did not obtain a decision by the New York Court of Appeals from which he could have applied for certiorari in the Supreme Court.

[6] The petition indicates that petitioner placed the document in the prison mailing system on May 24, 2016. For purposes of the statute of limitations and other filing deadlines, inmates are entitled to the benefit of the "prison mailbox rule." *See Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993) (under the prison mailbox rule, the court deems a pro se prisoner's papers filed on the date that the prisoner delivered the papers to prison officials for transmittal to the court).

[7] This is true even if the court uses June 17, 2015 as the date that plaintiff filed his motions. Petitioner's counsel filed his first motion on June 17, 2015, but he later withdrew the motion in order to file motions under both section 440.10 and 440.20 based on different legal arguments. The motions that were ultimately considered by Judge Dwyer were filed on October 16, 2015.

Petitioner's argument in this case is based, in part, upon *Miller v. Alabama*, 567 U.S. 460 (2012). In *Miller*, the Supreme Court held that mandatory life imprisonment without parole for defendants who are under the age of 18 violates the Eighth Amendment prohibition on cruel and unusual punishments. *Id.* at 470. The Court based its holding, in part, on two prior cases, *Graham v. Florida*, 560 U.S. 48 (2010) and *Roper v. Simmons*, 543 U.S. 551 (2005). *Id.* at 471. In *Miller*, the court stated that *Roper* and *Graham* established that children are "constitutionally different from adults for purposes of sentencing." *Id.* Because juveniles have "diminished culpability and greater prospects for reform," they are "'less deserving of the most severe punishments.'" *Id.* (quoting *Graham*, 560 U.S. at 68).

The Court in *Graham* held that a life sentence "without parole" for juveniles who do not commit homicides is unconstitutional, and the court in *Graham* distinguished such crimes from murder based on both moral culpability and consequential harm. 560 U.S. at 69, 82. However, the Court in *Miller* found that none of what the court in *Graham* said about children's transitory mental traits and environmental vulnerabilities was "crime-specific," and "[t]hose features are evident in the same way, and to the same degree, when . . . a botched robbery turns into a killing. *Miller*, 567 U.S. at 473. Thus, extending *Graham* to felony murder, the Court in *Miller* stated that *Graham's* reasoning "implicates any life-without-parole sentence imposed on a juvenile, even as its categorical bar relates only to nonhomicide offenses." *Id.* The court in *Miller* ultimately stated that "[w]e therefore hold that the Eighth Amendment forbids a sentencing scheme that mandates life in prison ***without the possibility of parole*** for

juvenile offenders." *Id.* at 479 (emphasis added).

In *Montgomery v. Louisiana*, __ U.S. __, 136 S. Ct. 718 (2016), the Supreme Court held that *Miller* announced a new substantive constitutional rule that was retroactive on state collateral review. *Id.* at 732-36. Thus, to the extent that plaintiff's petition purports to rely on *Miller*, he would be able to use the alternative date in section 2244(d)(1)(C) for the statute of limitations to start running. The important question in this case would be when the statute of limitations started to run because if the statute of limitations began to run on the date that the new constitutional rule was recognized in *Miller* – June 25, 2012, petitioner would have had only until June 25, 2013 to file his habeas corpus petition. Petitioner did not file this petition until 2016, almost three years later. If the date on which Supreme Court made the rule in *Miller* retroactive were the appropriate beginning date for the statute of limitations, then the petition would be timely because *Montgomery* was not decided until January 25, 2016.

In *Dodd v. United States*, 545 U.S. 353 (2005), the Supreme Court held that the statute of limitations under 2255(f)(3),[8] begins to run from the date that the new rule was recognized by the Supreme Court, ***not*** the date that it was made retroactive to cases on collateral review. In *Dodd*, the court recognized that this interpretation could lead to harsh results because the Supreme Court rarely makes a rule retroactive within a year after establishing the rule itself, but found that such an interpretation was consistent with the wording of section 2255(f)(3). 545 U.S. at 359. Even though the petition in *Dodd* was filed pursuant to 28 U.S.C. § 2255 as a motion to vacate his federal

---

[8] 28 U.S.C. § 2255(f)(3) is the equivalent statute of limitations for section 2255 motions to vacate a federal conviction.

10

conviction, the language of the relevant sections of the statutes of limitations are identical.[9] *Dodd* has been applied to section 2254 cases. *See Molnar v. Maldonado*, No. 3:15-CV-800, 2016 WL 632441, at *4 (D. Conn. Feb. 16, 2016). Thus, under section 2244(d)(1)(C), the statute of limitations would have started to run on the date *Miller* was decided and would have expired one year later on June 25, 2013. Plaintiff did not file his habeas petition until May of 2016, almost three years after the statute of limitations expired. Thus, the petitioner's habeas application in this case is untimely under either section 2244(d)(1)(A) or 2244(d)(1)(C).

There is no basis for statutory tolling because petitioner did not file his section 440 motions until 2015, after the statute of limitations expired under both of the above sections. As stated above, a collateral motion filed after the expiration of the statute does not restart the statute. *Bennett, supra*. Finally, there is no basis for equitable tolling under any view of the facts. Petitioner waited three years after the *Miller* decision to file his section 440 motions in state court, and petitioner was represented by counsel in state court. There is no evidence that petitioner was "diligently" pursuing his rights, and there were no "extraordinary circumstances" standing in petitioner's way, preventing him from filing his petition sooner. Finally, there is no issue of "actual innocence" because petitioner is challenging only his sentencing. He pled guilty to the charge and does not dispute the validity of the plea. Thus, the petition may be dismissed as untimely.[10]

---

[9] *Compare* 28 U.S.C. § 2254(d)(1)(C) *with* § 2255(f)(3).

[10] The court notes that, even if the petition were timely, it would fail on the merits. In this case, Judge Dwyer's decision denying petitioner's section 400 motions was not contrary to nor did it

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the petition be **DENIED and DISMISSED**, and it is

**RECOMMENDED**, that a certificate of appealability be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have

---

involve an unreasonable interpretation of *Miller* or any of the cases upon which *Miller* was based. To the extent that petitioner claims that the "youthful offender statute" in New York N.Y. Crim. Proc. Law § 720.20 is unconstitutional because it allows "youthful offenders" to be sentenced to mandatory minimum sentences, the statute does not allow such sentences. (SR at 118-19). One of the bases for Judge Dwyer's decision is that petitioner was not classified as an "eligible youth" under the statute because he was convicted of an A-1 felony. If an "eligible" youth receives a youthful offender adjudication, "there is no mandatory minimum sentence of imprisonment, and the maximum sentence which can be imposed is an indeterminate term of imprisonment of 1 1/3 to 4 years." (SR at 119). Petitioner was not a youthful offender, and thus, could not challenge the statute on that basis. To the extent that petitioner argues that due process was violated because he was not determined to be a youthful offender, the United States Constitution "'grants no independent due process right either to youthful offender treatment or to any particular procedure for denying it, as long as the trial judge imposed a sentence that was lawful under state law." *Mobley v. Zenzen*, No. 9:15-CV-1001, 2016 WL 1049007, at *9 (N.D.N.Y. Mar. 11, 2016) (citations omitted). State law claims are not cognizable in a habeas petition. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") To the extent that petitioner bases his argument on *Miller* and similar cases, Judge Dwyer properly found that none of those cases applied to petitioner or his sentence. Petitioner was not sentenced to life without parole or any sentence without parole. In fact, as noted by respondent, petitioner is eligible for parole in 2037. In his memorandum of law, petitioner argues that the differences between petitioner's case and the *Miller* line of cases are "superficial." (Pet.'s Mem. at 9). Petitioner's argument is meritless as evidenced by the Supreme Court's decision in *Montgomery*, in which the court stated that giving *Miller* retroactive effect does ***not require resentencing***. *Montgomery v. Louisiana*, 136 S. Ct. at 718, 736. In fact, the court held that

> [a] State may remedy a Miller violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them. *See, e.g.*, Wyo. Stat. Ann. § 6 10 301(c) (2013) (juvenile homicide offenders eligible for parole after 25 years). Allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity and who have since matured will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment.

*Id.* Thus, the fact that petitioner was not sentenced to life without parole is not a "superficial" difference. It is a critical difference which was recognized by Judge Dwyer in his decision. (SR at 118) (stating that "[o]nce again, the defendant is not a juvenile offender under New York law. For that reason and, because he was not sentenced to life in prison without the possibility of parole, *Miller* does not apply to his situation." (*Id.*)

fourteen (14) days within which to file written objections to the foregoing report. These objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: April 5, 2019

Hon. Andrew T. Baxter
U.S. Magistrate Judge